UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

AMANDA DORSHEIMER,
                      Plaintiff,

**DECISION AND ORDER**

v.

17-CV-01044

ANDREW M. SAUL,
COMMISSIONER OF
SOCIAL SECURITY,
                      Defendant.
_____

This is an action brought pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) to review the final determination of defendant Andrew M. Saul, the Commissioner of Social Security,[1] that plaintiff was not entitled to Social Security benefits. The parties have consented to the jurisdiction of a Magistrate Judge [12].[2] Before me are the parties' cross-motions for judgment on the pleadings [9, 14]. Having reviewed the parties' submissions [9, 14, 15], I order that this case be remanded to the Commissioner for further proceedings.

**BACKGROUND**

Plaintiff applied for Social Security Disability Insurance Benefits ("DIB") on October 21, 2013, alleging an onset date of September 18, 2013 (R. 193)[3]. She subsequently applied for Supplemental Security Income ("SSI") benefits on February 4, 2014, alleging a disability as of May 22, 2011 (R. 200). She asserts that her disability is due to severe depression,

---

[1]    *See* Reddinger v. Saul, 2019 WL 2511379, *9 n. 1 (D. Conn. 2019) ("on June 17, 2019, Andrew M. Saul became the Commissioner of Social Security. Because Carolyn Colvin was sued in this action only in her official capacity, Andrew M. Saul is automatically substituted for Carolyn Colvin as the named defendant. See Fed. R. Civ. 25(d). The Clerk of the Court shall amend the caption in this case as indicated above").

[2]    Bracketed references are to the CM/ECF docket entries.

[3]    References denoted as "R." are to the administrative record [7]. Unless otherwise indicated, page references are to numbers located on the bottom of the document pages.

agoraphobia, and panic disorder (R. 271). After plaintiff's claims were initially denied, an administrative hearing was held on February 29, 2016 before Administrative Law Judge ("ALJ") Robert Wright (R. 114). ALJ Wright issued a decision denying benefits on July 13, 2016 (R. 25). The Appeals Council denied plaintiff's request for review, and plaintiff thereafter commenced this action.

Plaintiff has a long history of psychiatric treatment. It is not clear from the record when that treatment began, although it appears to have been prior to April 6, 2011, the date she advised her primary physician, Dr. Nancy Peters, that she was no longer seeing her psychiatrist (R. 570). At that time, plaintiff had already been prescribed Zoloft and Xanax and was diagnosed with "[a]djustment disorder with mixed anxiety and depressed mood". Id.

After an attempted suicide on March 10, 2013, plaintiff was hospitalized at the Erie County Medical Center ("ECMC") Comprehensive Psychiatric Emergency Program ("CPEP") (R. 374). She had taken 20 tablets of Xanax, along with alcohol, after a fight with her boyfriend (R. 371). Hospital records reflect that she "immediately regretted" taking the pills and called her sister, and that plaintiff was being treated for "postpartum depression" since the birth of her daughter two years prior. Id.

On October 23, 2013, plaintiff was evaluated by PMHNP-BC[4] Lori Haspett, at the office of Dr. Junaid Hashim, her treating psychiatrist (R. 407). She noted that plaintiff's relationship with her family remain strained, and that plaintiff has anxiety which is controlled by Xanax, with the exception of "an occasional panic attack". Id. PMHNP-BC Haspett diagnosed plaintiff as suffering from "Major Depressive Disorder recurrent without psychotic features, Generalized Anxiety Disorder, Panic Disorder without agoraphobia". Id.

---

[4] A PMHNP-BC is a board certified psychiatric mental health nurse practitioner. See Perez v. Berryhill, 2019 WL 696911, *2 (W.D.N.Y. 2019).

Plaintiff was again brought to ECMC for suicidal ideations by the police on November 4, 2013 after she called crisis services (R. 463). She complained that she was stressed, felt lonely and had financial problems. Id. She reported that she had been having fights with various people, including the father of her child who filed for a restraining order against her because of her threats. Id. On November 6, 2013, plaintiff was again treated by PMHNP-BC Haspett, who added Buspar to her medication regimen and added "Alcohol use disorder" to plaintiff's diagnoses. (R. 405).

On January 9, 2014, plaintiff was seen in Dr. Hashim's office by PMHNP-BC Patricia Leone (R. 453). Plaintiff reported that she suffered "blackouts" two or three times, that she "freaks out", was hiding in her house, "gets angry", was "always agitated" and "on the defense". Id. She stated that she was arrested for hitting her significant other. Id. She acknowledged that "medication can only control so much" and rated her mood as "0/10". Id. PMHNP-BC Leone found plaintiff to be experiencing mood lability, depression, anxiety and noted that plaintiff's "anxiety not responding to Buspar". Id. Plaintiff was continued on Zoloft and Xanax, and her Lamictal was increased. Id.

Treatment notes reflect that plaintiff's symptoms waxed and waned. On January 31, 2014, plaintiff stated that she still felt agitated and that she was always depressed and anxious (R. 452). On February 28 2014, Dr. Hashim noted that the addition of Gabapentin "helped her anxiety", and that plaintiff utilized Trazodone to help her sleep (R. 451). On March 20, 2014, plaintiff reported that her depression was "unchanged" and that she still had "mood swings" which were "getting worse" (R. 450). On May 8, 2014, she was doing well (R. 447), but on June 5, 2014 she reported mood swings and noted that she became "upset very easily" and that it "takes hours to calm herself down" (R. 446). She stated that she felt like she did not have any control and that she was "very angry, feels very aggressive". Id.

On August 7, 2014 she advised Dr. Hashim that she was "o.k." and pregnant, but noted that although she had some help at home she was "finding it difficult to cope" (R. 443). Dr. Hashim updated plaintiff's diagnoses to include "Severe recurrent major depression with psychotic features, Anxiety state, Panic disorder with Agoraphobia" Id. He continued her on Trazodone, Lamictal, Sertaline, Gabapentin and Xanax. Id.

The dosages of plaintiff's various medications were decreased during her pregnancy (R. 441). On November 25, 2014, after plaintiff had given birth to her second child, she requested that her medications be returned to full dosage. Id. She reported that she still experienced moodiness, mood swings and that she was easily agitated. Id. Dr. Hashim diagnosed mood disorder and anxiety disorder. Id. On December 16, 2014, plaintiff reported that her moods "switch up and down, I get angry very easily from being fine. I start crying" (R. 439). Dr. Hashim diagnosed plaintiff as suffering "most likely bipolar disorder mixed type without psychosis", and "possible personality disorder". Id.

On January 2, 2015, plaintiff complained that she was "not doing well, I am afraid I am losing my mind" (R. 436). She reported that her sleep was erratic, and her mood was, at times, "severely depressed". Id. She expressed hopelessness "even if she is having [an] okay day she will think that tomorrow will be worse. She feels paranoid and feels people are talking about her and against her and they do not like her. . . . [She states that] she loses time and she came in her car and her boyfriend brought her, but feels that she does not know how she got here". Id. Plaintiff stated that at times her "mind may be out of control" and that "[s]he feels like a robot at times" (R. 437). Dr. Hashim noted that plaintiff's "presentation is complicated and complex". Id. He diagnosed "bipolar disorder, mixed type, OCD [obsessive compulsive disorder], and anxiety disorder" Id. Her medication regimen was modified by replacing Seroquel with Abilify, and

Xanax with Ativan. Id. Dr. Hashim noted that he had discussed the possibility that plaintiff may require hospitalization at BryLin Hospital if her symptoms worsen (R. 438).

On February 2, 2015, Dr. Hashim noted that plaintiff has OCD symptoms, the severity of which "is around 9 on a scale from 1 to 10" (R. 433). Plaintiff stated that when she gets stressed out, "she gets more organized and starts reorganizing things up to five times each one of them". Id. Dr. Hashim noted that her impulse control was poor and diagnosed "Bipolar disorder, mixed type; Generalized anxiety disorder; Obsessive-compulsive disorder; Alcohol dependence (currently sober for past one year); and Rule out borderline personality traits/disorder" (R. 434).

On February 16, 2015, plaintiff stated that she was "nervous, temperamental, get agitated easily, and feeling worse. I feel I'm losing my mind" (R. 431). She rated the severity of her depression as seven to eight on a scale of one to ten. Id. She described the severity of her OCD symptoms as a nine on the same scale. Id. Dr. Hashim stated that he observed plaintiff's mood to be depressed "quite severe initially" but that plaintiff started to feel more comfortable as he spoke to her. Id. In addition to his prior diagnoses, Dr. Hashim wanted to "[r]ule out posttraumatic stress disorder" ("PTSD") (R. 432).

Plaintiff symptoms continued to wax and wane. On April 14, 2015, plaintiff felt "okay" (R. 429); on April 29, 2015 she was "okay I guess" (R. 427); and on May 11, 2015 she was "doing okay, I'm not too mad" (R. 425). By June 9, 2015, however, plaintiff again felt "angry and [in] need [of] anger management" (R. 422). Upon examination, Dr. Hashim's findings were relatively normal, although he described her judgment and insight as "somewhat limited" and her impulse control as "poor" (R. 423). On June 27, 2015, plaintiff told Dr. Hashim that her anxiety has been "severe" (R. 419). He found her mood to be dysphoric, and her judgment, insight and impulse control to be limited (R. 419-420).

On June 29, 2015, plaintiff was evaluated by Dr. Alfred Belen at the Dent Neurologic Institute (R. 491). Plaintiff complained of feeling depressed and hopeless nearly every day, having trouble falling asleep, and feeling tired or having little energy. Id. Dr. Belen found plaintiff's mood to exhibit "moderate depression and anxiety" and her affect to be constricted (R. 492-493). Similar to Dr. Hashim, Dr. Belen's diagnoses included bipolar disorder, anxiety disorder, rule out PTSD (R. 493). Dr. Belen made similar findings with respect to plaintiff's mood, affect, and diagnoses, after evaluating plaintiff again on July 20, 2015 (R. 490).

On November 13, 2015, plaintiff was again seen by Dr. Hashim (R. 481). At that time, she stated that she felt angry, irritable and moody (R. 481). Her judgment and insight were found to be "partially intact", and her impulse control was "fair so far, but she maintains that she could lose control at any time". Id. On December 22, 2015, plaintiff reported that she was "doing good" (R. 483). Dr. Hashim noted that plaintiff's judgment and insight were improving and that her impulse control was responding positively to treatment. Id. He maintained diagnoses of bipolar disorder mixed type in partial remission and generalized anxiety disorder. Id.

A letter dated February 18, 2016, reflects that plaintiff was last seen at Dr. Hashim's office on January 19, 2016, but that she was no longer a patient because her insurance was no longer taken by his office (R. 560).

After the administrative hearing, ALJ Wright determined that plaintiff suffered from severe impairments including bipolar disorder, anxiety disorder, and alcohol abuse (R. 13). Nevertheless, he concluded that she could perform "a full range of work at all exertional levels but with the following nonexertional limitations: limited to simple, routine and low stress work, defined as having only occasional decision-making, changes in work setting or interaction with coworkers, and no interaction with others" (R. 17).

**DISCUSSION**

**A. Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error". Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

**B.     Did the ALJ fail to properly develop the record?**

In a residual functional capacity ("RFC') evaluation dated November 13, 2013, Dr. Hashim restated his diagnoses of major depression disorder recurrent without psychotic features, generalized anxiety disorder, and panic disorder without agoraphobia (R. 401). He referred to his initial assessment and progress notes as support for these diagnoses (R. 402). He noted that plaintiff was seen by him monthly (id.) and concluded that she "has periods of depression and anxiety that can impact on her ability to do work related activities" (R. 403). On February 29, 2016, Dr. Hashim stated his updated diagnoses of bipolar disorder, depressive disorder, generalized anxiety disorder and agoraphobia with panic disorder (R. 593). He

concluded that based upon these diagnoses, plaintiff "is currently not fit for work and should be granted complete disability benefits". Id.

ALJ Wright gave little weight to Dr. Hashim's initial opinion "because it is conclusory, and does not specify what tasks the [plaintiff] would be expected to have difficulty performing, or to what extent, or with what frequency" (R. 21). Similarly, he gave no weight to Dr. Hashim's 2016 opinion that plaintiff was "not fit for work" because it was also conclusory (R. 22). ALJ Wright also stated that Dr. Hashim's opinion was contradicted by the fact that plaintiff took care of her children and was able to undertake a variety of daily activities. Id.[5]

Plaintiff argues that ALJ Wright failed to properly develop the record by discounting Dr. Hashim's opinion without giving the plaintiff, who was unrepresented at the administrative hearing (R. 117), an opportunity to obtain a more detailed statement from Dr. Hashim, or by re-contacting the doctor directly for a clarification regarding the basis of his opinion. [9-1], p. 17. The Commissioner argues that "no crucial issue" was undeveloped, and therefore, the ALJ was not required to re-contact Dr. Hashim. [14-1], p. 22.

It is well established that where there are deficiencies in the record, an ALJ bears an affirmative duty to develop the administrative record. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir.1999); Tomassi ex rel. v. Colvin, 2014 WL 316727, *6 (N.D.N.Y. 2014). The non-adversarial nature of Social Security proceedings requires the ALJ "to investigate the facts and develop the arguments both for and against granting benefits". Sims v. Apfel, 530 U.S. 103, 111 (2000). The regulations specifically require an ALJ to "seek additional evidence or clarification from [the claimant's] medical source when the report from [that] medical source . . . does not contain all the necessary information . . . ." 20 C.F.R. §404.1512(e)(1).

---

[5] As discussed below, ALJ Wright did not provide "good reasons" to reject Dr. Hashim's opinion.

ALJ Wright acknowledged that "most of [plaintiff's] mental health treatment" was provided by Dr. Hashim and his staff (R. 20). Where mental health treatment is at issue, the opinion of a treating physician takes on added importance. A mental health patient may have good days and bad days; she may respond to different stressors that are not always active. Thus, the longitudinal relationship between a mental health patient and her treating physician provides the physician with a rich and nuanced understanding of the patient's health that cannot be readily achieved by a single consultative examination. *See* Canales v. Comm'r of Soc. Sec'y, 698 F.Supp.2d 335, 342 (E.D.N.Y.2010) ("Because mental disabilities are difficult to diagnose without subjective, in-person examination, the treating physician rule is particularly important in the context of mental health") (*citing* Richardson v. Astrue, 2009 WL 4793994, *7 (S.D.N.Y. 2009)).

As discussed above, plaintiff has had a long psychiatric history, which Dr. Hashim described as "complicated and complex" (R. 437). Plaintiff's history includes a suicide attempt (R. 374), suicidal ideations (R. 463), anger management issues (R. 453, 446), being arrested for assaultive conduct (R. 453, 463), severe recurrent major depression (R. 443), and poor impulse control (R. 434). She has been diagnosed with various serious psychological conditions including bipolar disorder, generalized anxiety disorder, depressive disorder, panic disorder with agoraphobia (R. 593), and at times OCD (R. 433, 437). The record reflects that, with varying success, plaintiff has taken a combination of medications to attempt to control these conditions, including Zoloft (R. 570), Xanax (R. 570), Buspar (R. 405), Lamictal (R. 453), Gabapentin (R. 451), Trazadone (R. 451), Sertaline (R. 443), and Ativan (R. 437). Plaintiff testified that she experiences side effects from the medication, including lack of energy, muscle twitching, and blurred vision (R. 127).

It is not difficult to infer from the record that plaintiff's various psychiatric conditions, and her associated history, may have some impact on plaintiff's ability to perform work activities sufficient to perform substantial gainful activity in a competitive work setting. Indeed, the extent that her conditions may limit her ability to consistently perform work activities is the crucial issue in this case.

The fact that Dr. Hashim did not expressly cite to his clinical findings when expressing his opinion as to the plaintiff's RFC does not mean that his opinion may be summarily dismissed. In Clark v. Commissioner of Social Security, 143 F.3d 115, 118 (2d Cir.1998), the Second Circuit recognized that a treating physician's "failure to include [proper] support for the findings in his report does not mean that such support does not exist; he might not have provided this information in the report because he did not know that the ALJ would consider it critical to the disposition of the case". Dr. Hashim's opinion as to these limitations is particularly important because, in light of plaintiff's complex psychiatric history, consulting physicians would not possess the longitudinal understanding of the impact of plaintiff's various conditions on her ability to perform work activities.

Here, Dr. Hashim expressly referred to his evaluation and progress notes when making his initial RFC in 2013 (R. 402). In any event, Dr. Hashim's opinions were not rendered in a vacuum, but must be assessed together with the various reports and progress notes reflecting his long-term treatment of plaintiff. See Medina v. Commissioner of Social Security, 2019 WL 1230081 (W.D.N.Y. 2019) ("even though Dr. Hartman's opinion itself did not include detailed examination notes, the record as a whole did").

ALJ Wright erred by failing to allow plaintiff to obtain a more detailed report from Dr. Hashim, or by failing to directly re-contact Dr. Hashim for that information. See Littlejohn v. Commissioner of Social Security, 2019 WL 1083693, *5 (W.D.N.Y. 2019) ("even

if the treating source statements were legal conclusions and not medical opinions, the ALJ nonetheless erred by discounting them without first asking for further interpretation or information from the treating sources") (citations omitted).

Because the record in this case was not properly developed to determine the extent that plaintiff's psychiatric conditions may impact her ability to perform work related activities, the case is remanded to the Commissioner for further proceedings.

**C.     Did the ALJ properly assess Dr. Hashim's opinion?**

Plaintiff also argues that ALJ Wright erred by rejecting Dr. Hashim's opinion. [9-1], p. 22. The opinion of a treating physician is entitled to controlling weight so long as it is consistent with the other substantial evidence. Halloran v. Barnhart, 362 F.3d 28, 32 (2nd Cir. 2004) (*per curiam*); 20 C.F.R. §404.1527(c)(2). When an ALJ discredits the opinion of a treating physician, the regulations direct the ALJ to "always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion". 20 C.F.R. §404.1527(c)(2); Snell, 177 F.3d at 134.

The ALJ first must consider: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidence that supports the treating physician's report; (4) how consistent the treating physician's opinion is with the record as a whole; (5) the specialization of the physician in contrast to the condition being treated; and (6) any other significant factors. Halloran, 362 F.3d 28, 32; *see also* 20 C.F.R. §§404.1527(c)(2)-(6).  The Second Circuit has advised that the courts should not "hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion". Halloran, 362 F.3d at 33.

ALJ Wright concluded that Dr. Hashim's opinion was not consistent with the record (R. 21-22).  Plaintiff contends that the ALJ engaged in "cherry picking" by ignoring the

evidence in the record which supports Dr. Hashim's opinion. [9-1], p. 25. For example, in addition to Dr. Hashim's progress notes, plaintiff points to the opinion of Dr. L. Hoffman, a non-examining psychologist, who stated that plaintiff would have limitations with "sustained concentration and persistence", and moderate limitations in accepting criticism, getting along with co-workers, and responding to changes in the work setting (R. 144-145). ALJ Wright does not adequately reconcile the evidence in the record which would support Dr. Hashim's opinion.

"It is a fundamental tenet of Social Security law that an ALJ cannot pick and choose only parts of a medical opinion that support his determination." Nix v. Astrue, 2009 WL 3429616, *6 (W.D.N.Y. 2009). This constitutes legal error. *See* Royal v. Astrue, 2012 WL 5449610, *6 (N.D.N.Y.), adopted, 2012 WL 5438945 (N.D.N.Y. 2012) ("[i]In effect, [the] ALJ . . . 'cherry picked' the evidence, relying on some statements to support his conclusion, while ignoring other substantive detail to the contrary from the same sources. This, however, does not satisfy a substantial evidence standard. While ALJs are entitled to resolve conflicts in the record, they cannot pick and choose only evidence that supports a particular conclusion").

In addition, ALJ Wright discounted Dr. Hashim's opinion based upon his assertion that the record reflected that plaintiff could perform various daily activities (i.e. driving, taking her daughter to school) and was "going to school full-time" (R. 22). The ALJ does not cite to documentation in the record reflecting that plaintiff was going to school during the alleged period of disability. The record reflects that plaintiff graduated from college in 2004 (R. 118), several years before the alleged onset of her disability. Plaintiff's testimony of her daily activities does not suggest that she had attended school during the alleged disability period (R. 119-128).

Based on this record, I cannot conclude that ALJ Wright has provided good reasons to reject the opinion of Dr. Hashim. I have remanded this matter for administrative proceedings to develop the record as to the impact of plaintiff's psychiatric conditions on her ability to perform work activities, including an attempt to obtain clarification as to basis for Dr. Hashim's opinion that plaintiff was not fit to work. The further development of the record will necessarily require a re-assessment of Dr. Hashim's opinion. Thus, upon remand, the Commissioner shall also reexamine the opinion of Dr. Hashim as to plaintiff's ability to adequately perform work activities.

## CONCLUSION

For these reasons, Plaintiff's motion for judgment on the pleadings [9] is granted to the extent that this case is remanded for further proceedings, consistent with the issues discussed above, and the Commissioner's motion for judgment on the pleadings [14] is denied.

Dated: June 21, 2019

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge